case below. This case has gotten I would like to reserve about two minutes for rebuttal. This case partly because the record below got a little convoluted and the issues I think became unclear. I think the case is very simple. The case is not about an overbreadth issue. Every case dealing with overbreadth was where a warrant was approved by a magistrate. The case is not about how the warrant was served. As we'll discuss in a minute, those issues are irrelevant. The case is about when a police officer intentionally alters a warrant, is that warrant valid and should the evidence pursuant to it be suppressed? When I say intentional, a lot of the government briefs and their arguments below it say this is a computer glitch, it was a mistake, it was inadvertence. Officer Kasper, the affidavit, did not unintentionally take a warrant, tear it apart, print out something new and put it in the warrant before he served it without going back to the judge. There is nothing mistaken about what he did. Do you have a finding of fact that this was intentional on part of the officer? Well, the judge found below that a different warrant was served. I understand that. I understand. Do you have a finding that the alteration, the sort of going back into the computer, attaching the new Exhibit A, do you have a finding of fact that that was intentional to get a different Attachment A? No, Your Honor. What I'm saying is the fact of tearing apart a warrant, the fact of changing a warrant was intentional. I think it's clear the officer below didn't know he was printing out a different copy. But what he did know is that he had a warrant signed by a judge that he altered, he changed, and didn't show it to the judge again. But I think you said two different things right there in that last sentence. He did know he was printing it out from the computer in a fresh copy. That we all understand. That's his testimony. Right. Are you saying he also knew that when he did Exhibit A or Attachment A that it was different from the actual warrant? No, I don't think there's any evidence he knew that, Judge. I see. So the only thing that was intentional was that in his view he printed out a fresh copy. And he decided to, for reasons he said, he didn't want to serve the probable cause affidavit at the scene of the search. He intentionally decided to change the warrant. He altered the original papers of the warrant. That's what I'm saying, Your Honor. But you're saying intentional change, but you don't mean intentional changing of the words. No. He intentionally decided to take the warrant, tear it apart, print out something new, and go serve it without reading it to see if it was the same. I'm agreeing with you, Your Honor, that he didn't know what he was printing out. But I think the intentionality is a broader issue. I understand the argument. Okay. Thank you. And when he did that, what he did was take over the discretion and authority given to a magistrate, because he did serve a warrant that had never been approved by Judge Louis by a magistrate. And let's say that he had done exactly what he did, but when he went to print out the document, he had actually gotten the right document. He got the wrong document. Right. I got you. He took the warrant apart, and the piece of paper that he served wasn't the actual piece of paper approved by the magistrate, the actual physical piece of paper, but it was identical in every respect. Same wording. Right. Would you still have the same argument? I think I would, Your Honor, and I thought about that. Because I think the issue we have here is how are the courts going to allow law enforcement to alter a warrant at all? I mean, the cases, the Ramirez case, it's almost a metaphysical question in a way, because if you make a photocopy of the document, I mean, let's say that he hadn't even removed the staple. Right. Let's say he had, I don't know how many pages there were, but you know how you can photocopy things by bending over the page. Yeah, fold over the part. Right. As a staple. So he had made a photostatic copy of every page of the document. And, of course, when they come out of the printer, they're not stapled or out of the copy, they're not stapled usually. I mean, most copiers. Some can, but probably not the police. Not when you do individual pages. Right. If you do a single document, you say copy a whole document, they will staple it. But if you're doing one page after another, which I'm presupposing you're doing if you're sort of copying one page at a time without unstapling the document, then you get a bunch of disconnected pages and then you have to staple them together. And the thing you're holding in the right hand is the original signed by the magistrate. And what you're holding in your left hand is an image copy of that document. And let's say that instead of, you know, he says, well, you know, this is the original. I don't want to take a chance on having the original with the manuscript signature somehow get lost or destroyed. So I will put this in my drawer in a safe place to make sure the original is safeguarded, and I will send into the field an identical photocopy. And it's, you know, in every respect the same except it's an image copy. Would that be ‑‑ would your argument still apply? I don't think so, but I'm glad I don't have to argue that position to you. I think it's very different. I think if you just copied it, I don't ‑‑ I guess there's two answers, Your Honor. I'm not trying to put ‑‑ I guess as you're answering that question, I would like you to focus on why making a copy using a photostatic process is okay, whereas making a copy using a printing process, using a computer and a printer, as opposed to a photograph, basically, is not okay. Okay. I'm going to try to answer it, Your Honor. I think there are really two ways to look at this. One is, in the metaphysical view, the word you used, is that metaphysically or abstractly police should not alter warrants that a judge signed, that the Fourth Amendment is really clear that you serve the warrant that was signed by the magistrate, and then the particularity clause defines how we get into certain circumstances. And I think a ‑‑ Well, what do you do with a photocopy? That is not the warrant signed by the magistrate. It is an image copy. You know, it looks the same in every respect, but it is, instead of having ink signature, which I presume the magistrate signed it in ink or ballpoint or, you know, some ‑‑ it is a photocopy. Right. I would like to say that if, you know, the photocopy would be okay to serve, other than, and I think probably everybody would agree, I think, ultimately, that if you serve the photocopy, that would be okay. The only issue I have with that is that it then leads to these other situations. Let me make it harder for you. Well, it's hard enough. Let's say in the process of photocopying, the machine eats a page. You know, so you put it in the machine. Let's say you're not using the sort of manual copy. Let's say you take this paper out, you put it in, and you say, make me a copy of the machine. And the machine skips a page or, you know, copies a page in a way that's illegible. Right. Unless it skips a page. Right. The two pages get stuck together on the feeder. Right. And instead of copying the whole thing, the copy has a page missing. What does that do? Well, I think then we get in a town situation, the case of town, where the affidavit, I'm not sure of all the facts. The affidavit, Exhibit A, I think it was in that case also, the magistrate said he saw it when he signed it. The policeman said he showed it to him, but somehow it didn't get attached to the court file, the document. You know, it wasn't in the clerk's file. I think that's a clerical error. I mean, I think copying it and leaving a page off, depending on what it is, you know, it may be, if Exhibit A was left off of a copy. And this is not a clerical error? No, this is an intentional act by a policeman to avoid leaving a probable cause affidavit there. He changes a warrant. It's not clerical to change it. And maybe I can only repeat what I said, Your Honor, is that he made intentional acts for his own reasons to change the original warrant, didn't take it back to the magistrate, didn't just decide, he didn't even read what he copied, printed out, to see if it was different. Just as in one of the cases, the Ramirez case, they typed in by mistake in the areas to be searched the address of the, of where, the address of where you were going to search instead of what could be seized. The items to be seized. Right. So they typed, that was a clerical mistake. Right. I think you're familiar with the case. I do know it. I do it. So I think there you could say that was. I was expecting it to get reversed. Huh? I was expecting it to get reversed on that one. It was close. But. Close enough? Close enough. But close only counts in other things. I think there, that could be a clerical error. Clearly the policeman didn't mean to type in the address. But it wasn't ruled to be a clerical error. And here, when you get what happened here, which is the scope of the search is greatly expanded. Because the policeman decided to take an act which he shouldn't do, which is change the warrant, you have an invalid warrant. I mean, I think there was a finding below. But, Counsel, what are we to do with the district court examining all of the, all of the evidence and suggesting that none of the evidence was seized in excess of the original attachment to the search warrant? Once the district court has said, that's fine. We understand that the officers have stumbled here. They shouldn't have done what they did. They should have left the original attachment A to this instead of the expanded attachment A. But as I look at all the stuff that was seized, none of it was seized by from areas that were nearby, which was the language that was added to Exhibit A. What's the problem then? Well, the problem is, as we found out in Groh, in Ramirez, and in Grubb, Your Honor. You aren't challenging the finding as clearly erroneous, are you? No, I'm saying these cases have stated legally, not factually, Grubb particularly in this circuit, but also Ramirez and Groh, I believe, that how the warrant is served, even if the officer does his best to comply with what he should have done, it doesn't cure the warrant. The language in Groh is, even though Petitioner acted in a restrained manner in conducting the search, the inescapable fact is that that restraint was imposed by the agent. And the same argument, the same finding is found in Marty and in Ramirez, that if the warrant is defective, it can't be cured by how it's served, just as it can't be cured by what an officer says. But we did have, we had in existence a valid warrant. And the officers conducted a search that was within the terms of the valid warrant. Your Honor, the officers who conducted the search didn't know about the original warrant signed by the judge. Only Officer Casper, who said he had a meeting. But fortunately for the officers, perhaps, the things that they seized were within the warrant. The only words that were added was, I think, three places they added the words, or nearby. So it was, you know, in the house, or nearby, or in the garage, or nearby. And also added, including but not limited to. Including but not limited to. Right. But the things that were seized were seized from the building or places that were identified in original Exhibit A and were not within the or nearby language. So everything that they seized had been duly authorized by the magistrate. So what's the problem? Well, the problem is, I don't mean to be flippant. The problem is the Constitution and what we do when warrants are not particular. Because here, the warrant served by the police was not issued or approved by a judge. And the cases in this circuit, as well as the U.S. Supreme Court, have made it clear when that occurs, when the warrant does not meet the particularity requirement, then how it's served and whether the officer stayed within what the magistrate wanted is irrelevant. I mean, that's the rule of this circuit, as well as now and grow for as long as it lasts, the rule of the United States. And I — it's not a factual finding I disagree with the judge below. The law is really clear. And I think the judge was very troubled when Ramirez came out, because he realized Ramirez raised an issue after our first argument that he had to address. So that's my answer, Your Honor. Any other questions? If there are, I reserve two minutes. Well, you're about three and a half minutes over. Well, you asked me a lot of questions. We've taken up much of your time with this question. We'll give you a minute for a bottle if you choose to take it. Okay. Thank you, Your Honor. We'll hear from the government. Good afternoon, Your Honors. I'm Amber Rosen, representing the United States in this case. The issue here is remedy. There's no question that there was a Fourth Amendment violation from the officer's inadvertent attachment of the Fourth Amendment with a list of items to be seized that was not identical. How was it inadvertent? I'm sorry? How do we know it was inadvertent? Well, first of all, the district court found that it was inadvertent. I think it's important in — What language do you rely on? Well, if you look in the excerpts at tab P, page 26, in there the court found the officers credible, and the officer had testified that the error was inadvertent. In addition, in tab U, page 13, the court refers to the officer's conduct as inadvertent, negligent, unintentional. It uses a number of — You were too fast for me. I found tab P, page 26, but then you give me another page citation. U13. U13. While you're looking — Well, I've got U13, and I'm not sure what you're referring to there. Can you point me to actual language? Did you say P26? I did. On U13, the court says the over-breath issue — What line are you — I'm sorry. Beginning with line 14. The over-breath issue here is one that is clearly raised by the expanse of language, negligently, inadvertently — I'm sorry. I must be on the wrong. This is the transcript of April 10th hearing? No, I'm reading March 27th, 2003. Okay. Then I'm confused. What tab again? U. U. Okay. And then page 13 of the transcript, beginning with line 14. Okay. The court says the over-breath issue here is one that is clearly raised by the expanse of language, negligently, inadvertently, accidentally included in the description. In addition, in tab P — I'm sorry. What does that bar you? I'm sorry? What does that bar you? What does that bar me? Yeah. I mean, what — I think the court is indicating — I asked you where there was a finding. Well, when the court — You're saying negligently in quotes, inadvertently in quotes, accidentally. I don't see where he is finding that this was, in fact, accidental, inadvertent or negligent. I think you need to read it in the context taken together with his findings. This is your job. You should show me where he found inadvertently. You need to begin with page — tab P, page 13. I'm sorry, page 26. That's where we — Okay. I'm there. And what have you got there? There, the court made a finding that both officers were credible, page lines 18 and 19. I found them both credible. What the officers had testified to was that the additional language in the — that they didn't know or mean for the additional language to be in the attachment. So the court found them credible on that point. So that is implicitly a finding that the mistake was unintentional and accidental because the officers testified to that. That taken in combination — I prefer that that sounds like explicit rather than implicit. They said it was inadvertent. He says I find them credible. Okay. I'll agree with that. Okay. I didn't think you would. I disagree. I think then when you also take that in combination with what we read from tab U, page 13, the quotes there — I mean, I think that goes to that's the court's characterization of what happened. The quotes there are put in by the court reporter. There's nothing to indicate that the court was putting those in quotes. And so by inference, the court is making a finding that that language in the list that was taken to the site was negligently, inadvertently, or accidentally included. So I think in combination, those two statements by the court equal a finding, that the court believed the officer when he said that the change to the list was inadvertent. I think it's important to clarify the scope of what the intent goes to. We're talking about was the Fourth Amendment violation intentional. And what constituted the violation in this case was the change to the list, not as defense counsel is trying to assert that the pieces of paper were changed either by the reprinting or, as the court pointed out, or it would be in the case of photocopying. I mean, there's no constitutional significance. I'm having even trouble understanding why there was a Fourth Amendment violation. The warrant it actually signed appears to have been a valid warrant. The warrant was changed by the addition of a different attachment that has the or nearby and not limited to language. Right. But, of course, it's not a Fourth Amendment violation to print out something that's not within the warrant. I mean, they could do that and throw it away. It turns out they take out to the house the wrong attachment. But as far as I can tell, it was never exhibited and relied upon at that point. Where is the Fourth Amendment violation? Well, Your Honor, we've the government, of course, took a position below that there was no Fourth Amendment violation. Ultimately, the court found that there was, and we're not here contesting that. I see. And where.  Okay. Exactly. Well, how about this is a Fourth Amendment violation. The officers go to the scene and they are guided by the document that tells them what they can search and what they can seize. And the document that they took with them authorized them to go into areas that went beyond the actual authorization given by the judge. Right. Which is why I think the district court found that it was a violation, and we're not contesting that here. We're saying that the court remedied to. So if the officers, we don't know where they went, but presumably they were guided by what the document said. And if it said house and nearby, they probably went in the house. And I forget exactly what the. No, we know, in fact, that it was executed within the scope of the originally authorized warrant and that they did not go into the expanded areas. And there was a specific finding of that by the judge. And that is a tab you page. I'm sorry. Tab P page 31. So we do know that. But I think for our purposes, that's not particularly. Line 13 through 15, the court says whether the scope of what was allowed for in terms of the seizure was exceeded and the record clearly indicating that it was not. No, that doesn't support what you just told me. Yes, that was a finding by the court that the officers did not, in fact, exceed the scope of the warrant as originally authorized. Things that went other than those authorized by the original warrant. It says nothing about where they went and searched. Well, no, we know that, too, because, again, the officers testified. The thing you just told me, my question was about the scope of the search. You gave me this reference on page 30. That doesn't support that at all. Okay, well, then let me go back and answer your question. I'm sorry? Then let me go back and address your point, because I think the court did make a finding of that. Again, the officers had testified. Sorry. Because I think the court. Do you have another site on that? Excuse me? Do you have another source where the court made a finding that the officers. Yes. Well, give it to me. That's what I'm trying to do. The officers had testified that they, in fact, did not exceed the scope of the search, that everything, that where they looked and everything they found was limited to inside the houses. And the court, again, going to tab P, page 26, found the officers credible. In other words, the court found them credible on every point. Yes, the same officers. I'm sorry. I'm getting my cast of characters confused here. There were two officers that testified. One was the affiant. This is page, tab P, page 13. Where was this finding, again, that you found credible? Tab P, page 26. 26, okay. The officer who had executed the search at the Maddox Avenue house had testified that. I'm sorry. What was his name? Delanus, I believe. Okay. And Casper was the guy who. Who was the affiant. Who did the photocopying or the printing out? Correct. So the officer who executed the search, and I'm afraid I don't know the exact page where he testified to this. I could find it or submit it to the court later if you like. But that officer testified. I believe he testified, and I guess I could be mistaken, that they not only found everything inside the house, but that they had only looked inside the house. And the court credited that testimony. So that's my best recollection of the record at this point. So if they go in under a warrant authorization that says you can only search the living room and the kitchen, as authorized by the judge, and they take a warrant with them that says you can search the living room, the kitchen, and the bedrooms, there's no violation if they go in and don't go beyond the living room and the kitchen? No, we're not arguing that. The court below found a Fourth Amendment violation for the exact reason that you're stating, and we are not here contesting that. All we're saying what I think what the issue here, that's not the issue before the court. The issue before this court is whether the court below gave the proper remedy for that violation. What the court below said was I'm going to sever the warrant into its valid portions and its invalid portions. Everything that was reviewed and approved by the judge and taken to the site by the officers was valid, and anything found under those terms of the warrant I'm going to say should not be suppressed. But to the extent that the warrant was changed, anything, and that that was taken to the site, anything seized under that unreviewed portion of the warrant needs to be suppressed. And what we're here saying is we think that severing the warrant in that way was the correct remedy. And the reason for that is that severance is the general principle applied by this court. That's the general rule. Only suppress evidence that is the product of the illegality. And here the illegality was adding those eight words, whether inadvertently or purposefully, here it was inadvertently, to the list of items to be seized. None ---- Officer gets authorization. There is a warrant out there which is a valid warrant. We know that the magistrate signed. But the piece of paper that the officer takes with him is not that warrant. He is acting under the authority of a piece of paper that really is not a valid warrant. It is something that looks very similar to a valid warrant, but it's not in fact a valid warrant. I think the question there is does the change to the warrant invalidate the entire warrant such that suppression is not available, severance is not available, or does it only ---- That's not the question at all. There is a valid warrant. And it's sitting somewhere in Officer Casper's desk. The question is whether the document that Officer Delanus took with him was in any sense a valid warrant. Right. That's what I'm ---- It was not the warrant that was signed. It was another document. Right. Does the changes to that, to the copy that he takes with him to the house, invalidate ---- Does it invalidate the entire warrant that he takes to the house, or does it only make it invalid? That may be your question, but it's not my question. My question, is that a warrant at all? Is the thing that he takes with him a warrant at all? Or is the warrant the thing that's sitting in Officer Casper's desk? I mean, you have this document that is not in fact the thing that the judge authorized. What makes it a warrant? And I'm trying to address that. What makes it a warrant is that a couple of things. First, it was reviewed. It is the same warrant reviewed and approved to the extent that it is supported by probable cause. There's no question about that. It is the same warrant that was reviewed and approved to the extent that it lists the places to be searched. It also is the same warrant with respect to the list of items to be seized that was reviewed and approved, except for these eight words. Now, why is the question ---- You're presupposing that ---- No, I'm trying to answer it. I'm getting to that. But you're not succeeding. Well, I'm laying the foundation, and now I'm going to answer that question. Why is it the same warrant? You say it is the same warrant to the extent. Why is not the correct way to look at it is this is not a warrant at all. All right. This is a collection of papers that is not a warrant. The warrant is the thing that is in Officer Castro's desk. This is something else. Right. I understand your question. I think I have a twofold answer to that. One is because I think this Court's jurisprudence and that of the Supreme Court is to save what you can in a warrant. For example, in this Court's decision in United States v. Vondam, what happened there was the officers had a valid warrant that was signed and approved by the judge. When they went out to the search site, they didn't have the list of items to be seized with them at all. So the Court found that the warrant was completely lacking in particularity. Okay? But it remanded the case to the district court to determine what evidence was contraband, seized in plain sight, because it said the warrant was still valid as to its probable cause and as to its authority for the officers to be in the house. And, therefore, any contraband in plain sight could still be saved, even though everything else that they searched for had to be suppressed because the warrant lacked particularity. So I think there's some precedence there for saying we save what portions of the warrant that we can. Secondly, and this is not a case like the Grove v. Ramirez case, where when the officers went out there, there was no particularity to the warrant at all, as in Vondam. In both of those cases, the warrants were totally lacking in particularity. But that's not the situation here. The warrant, as authorized by the judge, was sufficiently particular. There's no case – there's no question about that. And even as executed, the defendant even conceded below. Even the changed version was sufficiently particularized. And the defense facet, tab M, page 8. So that I think where you have – The problem you have is what Grove went off on, to a large extent, is the fact that the – remember, Grove was a 1983 case, or a Bergen's case. It was both – there were both Federal and State offices involved. And what we said there was that the fault was in failure to read the warrant before you executed it. The same fault happened here. Officer Casper made a copy of the warrant, and he didn't take the trouble to make sure that the thing he's sending out in the field for people to execute, you know, this powerful weapon that we safeguard under our Constitution, make sure that only judges approve it. He takes it apart, and he doesn't take the trouble to then make sure that he reassembles it in an accurate fashion. And if that was good enough for liability under – you know, to overcome even qualified immunity in Grove, why shouldn't we say in this case, well, he should have read the thing. And when he sends something out there that is not the thing the judge approved, then it's not a warrant at all. It's just a collection of papers. I think there's a couple reasons. One is I don't think in this case, or even in Grove, that the violation, the Fourth Amendment violation, was the failure to read. In other words, the failure of – Why isn't – why wasn't it? Because – He sends an officer out there in the field to force somebody's door open, to search somebody's house, and he doesn't bother to make sure that it is a thing that the judge approved. Because, as I think you even said before, had the agent reprinted a copy that was identical, even if he hadn't read it over, if it was in fact the same, there wouldn't be a problem here. So the violation was the fact that the warrant was in fact different. The list was different. And in Grove, it was because the warrant didn't have any particularity at all. The violation wasn't the agent failing to proofread. It was the agent not bringing a particularized list to the site. And in here, it was the agent bringing a list that had some variations from what the judge had approved. So why should – why is it still a warrant? Say no. You want to characterize it that way. Why isn't the appropriate way to characterize it is when the officer who obtains a warrant from a judicial authority then hands it to another officer and empowers him thereby to go out and execute the law, exercise the power of the United States to break down somebody's door and search their house, he has to make sure that the thing he hands over is in fact the thing the judge approved. Completely within Casper's control to do that. He could have read every page. He could have read every – he could have been more careful in printing out the file. And instead, he attaches something else and sends an officer out in the field. He's the only one who has the power to tell. The judge can't do it. The officer executing it can't do it. The person whose home is being searched can't do it. The only guy who's got the power to figure out and make sure that the thing being sent out there like a loaded gun is his document, which is approved by a judge, is the guy who takes apart the warrant and then reassembles it badly. Right. And the fact is the court found that there was a violation from him doing that. And it suppressed the evidence that was – or in this case there wasn't, but any evidence that would have been found or was found under the changed version. The court said, look, you made a mistake and you cannot benefit from the mistake. Had evidence been seized pursuant to the expanded versions, it was suppressed. I think the difference is – Let me get at it from a different direction. I am not comfortable with this idea that after judges approve documents, approve warrants, that law enforcement officers can take it upon themselves to not only take them apart and reassemble them, but they can choose to substitute pieces of paper from their computers. Where does this come from? I mean, the potential for mistakes, the potential for intentional broadening of the warrant, which then you have to rely on the officer's words to know what happened, you know, is pretty significant. I mean, that's what will happen. You let people assemble them and disassemble. Where does the officer get the authority to take this thing and then go into his computer and say, I'm not going to actually use the page or even an image of the page that the judge approved. I'm going to go into my computer and print out what I think is the same file and have that be the – you know, make that be the warrant. Where does that authority, where does that power of the officer come from? Well, I think as a practical matter, there's no way to – that the officers can't disassemble warrants and have to put them back together. For example, they're required to take copies with them. They're required to give the search – the leaders of the search teams copies. They're required to leave a copy with the homeowner if the homeowner is present. So when you serve a search warrant, there's going to be multiple copies made. And whether they're photocopied or they're reprinted, you're right, there's always the possibility for human error in photocopying. But it's a little different. It's a little different to go into your computer and print the same document over again. It is, but I don't think it's – Why exactly does he do – well, we don't know. This is new stuff. We don't have a case dealing with this. This will be the first case that we'll deal with it. So we have to decide whether it's okay, whether it's constitutional. I still don't quite understand why he did this. Why couldn't he just make photocopies of the thing that the magistrate judge approved? Why did he have to go into his computer and take the risk that he might print out the wrong file? Well, his testimony wasn't that he had to. The testimony was that he did it because he was trying to make the copies cleaner, that this way the attachment would be on one page instead of overlapping on two pages, and he thought it would make it neater and cleaner to make for the copies and for the search teams. Why is that a legitimate purpose, to sort of change the format from that which was presented to the judge? Why is making it look neater and cleaner rather than having it accurately be the thing that the judge approved? Why is that a legitimate purpose? I don't think that's the test. I mean, he wasn't doing it – I hope that was the test. I'm asking a question. Why is that a legitimate purpose, whether it's a test or not? Why is that something cleaning up a – why is cleaning up a warrant for scratch marks or because it doesn't look neat or because you think it's better on two pages rather than one page or one page – why is that the kind of fiddling with court-authorized documents? Is it okay if you take the court file from the clerk's office and you decide, you know, there's a pleading in here. I think it would look neater if I substituted a different version of the pleading in here, one that was sort of formatted better, and while the clerk isn't looking you take out the pleading that was actually filed and you substitute – or let's say you file something and then you go home and you say, oh, my God, my pleading was full of typos. I think I'm going to be so embarrassed, so what I'm going to do is I'm going to go take the court file out and I'm going to substitute a cleaned-up copy of my pleading to avoid the typos. Is that legitimate? Is that the kind of thing we allow court officers to do? I don't think that's what's being implicated here. Is that legitimate? It's just not a question. Well, I understand. Would that be a legitimate thing for a lawyer to do? No, but that's not what the officer did here. It's certainly not for a court order to say the court signed a court order and I think he would have used better language or he could have had a cleaner copy, so what I'm going to do is take the court's order out and reformat it and put it back in the file and have that be the court's order. That would be wrong, too, wouldn't it? Yes. Why is this wrong? The agent was required to execute the warrant approved by the judge, not the same pieces of paper approved by the judge, but the content the same as approved by the judge. And he accidentally brought a version of the list of items to be seized which differed. There was a violate. There is a constitutional violation from doing that. And the question is, did those changes undo the judicially reviewed and approved portions of the warrant since those judicially approved and reviewed parts of the warrant were, in fact, also taken to the search site? And I think the bigger issue is, look, the courts generally apply the principle of severance and try to uphold the valid portions of the warrant that they can. And they only suppress evidence that is not the product of the illegality. Let me ask you a question. How do we, if we really don't like officers doing this, if we really think this is not a good thing for them to be doing, personally I think this is a very bad thing for them to be doing. I think that when a judge signs a document, the thing they ought to serve is at most a photocopy, an image copy of the thing, not go in and reform it and make it look better. I think this is totally illegitimate for them to be doing it. Now, how does our saying, it's okay, no harm, no foul, bring that about? How do we make sure that this doesn't happen again? Well, what the district court did was not say no harm, no foul. It found that there was a Fourth Amendment violation. It happens in this case that no evidence was found pursuant to the expanded language. But had the evidence be found pursuant to those portions, they would have, it would have been suppressed. So the government is not benefiting from its mistake here. And so it's, I think it's a mischaracterization to say that there was no, that there's no deterrent effect from the court's ruling. The government is not benefiting from its mistake, nor is it, under your view of the case, being punished for its mistake. Let me ask you this. What happens if on rereading the affidavit and the testimony of Officer Delanus, we discover that he says, as I think he did say, only that no evidence was seized outside the scope of the permitted search, and he does not say one way or the other as to whether any of the searching took place outside the scope. Does that make a difference to your case? I don't think it does, because the fact is the Fourth Amendment violation was found. And I think that is a punishment. I would, I think that is a punishment to the government. In other words, I think that sends a strong message whether or not the case is still prosecutable enough. I also think, so that it, so the violation comes from the mistaken authority to search in those expanded areas, whether or not they search in those areas or not. So even if they had, same analysis. The record appears to be silent as to whether they searched outside, because the only thing that Officer Delanus says, at least as I read the testimony, and I reread it as you were talking quickly, so I might have missed something, but the only thing I could pick up was that he said nothing was seized outside the authorized areas. I apologize for the mistake. No, you indicated you weren't sure. I really think the question is, so any evidence that was the product of the illegality here, the bringing the expanded version, was seized. It's just happenstance that they didn't find anything there. So what happens to the fact that they went into areas, if they did, that were not authorized by the warrant, and they did it because they thought that the warrant authorized it. So they go into, let's say it says don't go into the bedrooms, and in fact they go into the bedrooms because the piece of paper that they carry says it's okay. Well, that's the danger of the case, and that's why there's a violation. The question for this Court is, was the violation so flagrant, made in such flagrant disregard for the terms of the warrant, the actual authorized warrant, that the evidence that was not the product of the illegality needs to be seized, suppressed also? And I think the question there is no. The answer there is no, because it was unintentional that the language was changed, and that ought to count for something. Officer Castro was not flagrantly disregarding the terms of the warrant. He may have been imprudent in reprinting it out. He may have been careless in not rereading it, but he wasn't trying to disregard the terms of the warrant. I don't hear you saying that you're going to make sure that this never happens again, that the officers are going to be instructed that this is a terrible thing to do, and to avoid it at all costs. I hear you saying, well, too bad. And that does not give me any assurance, as the president of my government, that this is the kind of thing we ought to just let pass by. Well, that's not, then I'm not conveying it well, because I'm not trying to convey that. I think it was serious that the warrant that was taken out was altered, and I think it's appropriate that a Fourth Amendment violation was found with respect to that. But that would be true whether or not there were any changes in the words. When the officer goes in and says, I'm going to reformat this document because I think it looks better, and I'm going to make a photocopy, I'm going to do something else than what the judge approved, takes it upon his own authority to alter the document, that itself is bad, whether or not you wind up printing out the wrong file, because you're at that point taking a risk that the very thing that happened here is going to happen. But he wasn't trying to alter the warrant. I mean, I really think you have to ask yourself, would he? You said he was. You said he was. You thought it looked better on two pages than on one page. Well, to that extent, but not the content of it. I mean, had it been identical in content and not included those eight additional words, then I would argue there would be no Fourth Amendment violation. Then the warrant as executed was the warrant as authorized. Every item that was authorized to be seized by the judge would have been taken to the search site. The officer's discretion would have been properly limited. The homeowners, had the defendant been home, his notice and assurance would have been secure. And that's what the Fourth Amendment guarantees. It doesn't guarantee that the officers aren't going to make mistakes sometimes. And when their mistakes, you know, go too far, the evidence is going to be suppressed. But do you suppress the evidence that doesn't result from the illegality when it's an unintentional mistake? I mean. What you're saying does not give me any sense of comfort, but I think your time is up. Thank you. You have a minute for a break if you choose to take it. I would approach one issue, and I think the key issue as I see it, this wasn't a legal warrant that was served. The warrant was not approved by a magistrate who reviewed it so that everybody, the courts, the public, Mr. Sears, all of us can have beliefs that the courts approved this. The policy argument for this is very clear. Society has to be sure that the police don't act independent of a judge when they enter people's homes. Here they did. The only way to stop it is for this court to tell the police you cannot alter a warrant, plain and simple. Because in our case, no one would have found this out if we hadn't gone through all these hearings. This would have just happened, as has probably happened many times. Just as the U.S. Attorney said, it's not a big deal. They didn't try to do it. The policy has to be police do not mess with warrants signed by a judge, plain and simple. Do you have any evidence that the police conducted the search outside the scope of the warrant? No, Judge. The record is unclear, as you said. But I do have evidence that they took a warrant that a judge had approved and changed it. They altered it. That's what's clear, and I think the policy issue with which you'd be involved. But, no, I don't. I don't have evidence. I was at the hearing, too. That question simply wasn't asked. The question was asked, was the evidence seized within the scope? The answer to that was yes. And the next question about was there any searching outside the scope, that question simply was not asked. That's correct. Yeah. All right. Thank you very much, Your Honors. Case is sorted. We'll stand submitted. Thank you. We'll next hear argument in the United States of America. Here I give you.
judges: Kozinski, W. Fletcher, Bybee